**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| Z. N., | : | |
|---|---|---|
| **Plaintiff** | : | **CIVIL ACTION NO. 1:18-1286** |
| v | : | |
| | : | **(JUDGE MANNION)** |
| **CUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES,** | : | |
| | : | |
| **Defendant** | | |

## MEMORANDUM

**I.　BACKGROUND**

On June 26, 2018, the plaintiff, Z.N., filed, through counsel, a civil rights complaint under 42 U.S.C. §1983, raising due process claims under the U.S. Constitution and the Pennsylvania Constitution alleging the deprivation of his liberty rights as well as the violation of his property interests to privacy and reputation by defendant Cumberland County Children and Youth Services ("CYS").[1] The plaintiff alleges that CYS failed to provide him with a pre-deprivation mechanism to challenge its finding of an "indicated" report of child abuse before reporting his identity to the Pennsylvania ChildLine Registry, a

---

[1]The court notes that since CYS is an agency of Cumberland County, it appears that the proper defendant is the County. *See* Mulholland v. Government County of Berks, Pa.,706 F.3d 227, 234 n. 12 (3d Cir. 2013)( the Third Circuit noted that the district court granted Berks County Children and Youth Services' summary judgment motion and "reasoned that, for purposes of §1983 liability, a county agency is not a legally separate entity from the county itself, and any actions by the agency are imputed to the county."

statewide database, pursuant to the Pennsylvania Child Protective Services Law, 23 Pa.C.S.A. §6318, *et seq.* ("CPSL"). The plaintiff also raises a claim alleging that his association rights were violated since CYS conducted an *ex parte* dependency hearing on April 26, 2018 and a "no contact Order" was issued by the county court preventing him from associating with the alleged child victim, without affording him notice and the opportunity to participate in the hearing. He also states that a May 25, 2018 court Order also violated his "due process right to notice of a proceeding of which he [was] a subject; and which deprived him of his right to contest the Order, which abridged his right to associate with the alleged victim in those proceedings."[2]

As relief, the plaintiff requests the court to hold that the CPSL is unconstitutional and in violation of his privacy, property, liberty and due process rights. The plaintiff also requests the court to issue a temporary, *ex parte* injunction and/or restraining Order prohibiting the dissemination by CYS of his identity to the ChildLine Registry and to issue a permanent injunction to prevent the further enforcement of the CPSL against him. The plaintiff also seeks his attorney's fees and costs.

The plaintiff simultaneously filed a motion for an *ex parte* injunction.

---

[2]The plaintiff attached copies of the court Orders to his complaint as exhibits. Copies of CYS's original April 26, 2018 report of alleged child abuse and its June 19, 2018 revised report alleging abuse by the plaintiff in the nature of "causing sexual abuse or exploitation of a child" are also attached to the complaint.

2

(Doc. 3). The plaintiff moves this court to enjoin and/or restrain CYS from forwarding his identity to the ChildLine Registry and to prevent the entry of his identification and registration information in the Registry by CYS.

The court reviewed the plaintiff's motion and exhibits and found no reason why his injunction request need be made *ex parte*. As such, the court directed the plaintiff to serve counsel for CYS with his injunction motion and directed CYS to respond to the motion by July 2, 2018. (Doc. 4). The court also stated that after CYS filed its response, it would decide whether it was necessary to conduct a hearing on the plaintiff's motion. After the plaintiff served CYS, CYS filed a motion for an extension of time to file its response by July 9, 2018. CYS then filed its Answer[3] to the plaintiff's injunction motion, (Doc. 11), as well as a brief in opposition, (Doc. 12). On July 13, 2018, the plaintiff filed a reply brief with exhibits in support of his motion. (Doc. 19).

Based on the following, the court will **DENY** plaintiff's motion for an *ex parte* injunction.

## II. DISCUSSION

Initially, the court finds that no hearing is required regarding the plaintiff's injunction motion since, as discussed below, it is not likely the

---

[3] An "Answer" is not an appropriate response in federal court to a motion. Rather a brief in opposition is the correct responsive filing. Therefore, the "Answer" (Doc. 11) is **STRICKEN** from the record.

3

plaintiff will succeed on his federal claims and, since the plaintiff has adequate state remedies available to him under the CPSL to challenge CYS's finding that he is an "indicated" perpetrator of suspected child abuse and to challenge CYS's reporting of his name to Pennsylvania's statewide child abuse registry, namely, ChildLine.

The child abuse registry, "known as ChildLine, is operated and maintained by the Pennsylvania Department of Public Welfare ("DPW")." Mulholland, 706 F.3d at 231-32. "A county agency, like [CYS], may render three conclusions by sending a CY-48 form to DPW: namely, that the allegations of child abuse are 'founded,' 'indicated,' or 'unfounded.'" Id. at 232 n. 5. Further, "[a]n 'indicated' report is appropriate 'if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following: (1) Available medical evidence. (2) The child protective service investigation. (3) An admission of the acts of abuse by the perpetrator.'" Id. (citing 23 Pa.Cons.Stat.Ann. §6303). "'[S]ubstantial evidence' is '[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion.'" Id.

In a related proceeding on May 25, 2018, the Cumberland County Court issued an Order stating that the minor child, who is the subject of the plaintiff's alleged abuse, was "adjudicated dependent" on April 26, 2018. The Order also stated that on April 26, 2018, the court ordered the plaintiff "to have no

4

contact with the minor child, [ ], pending further order of the court."[4] (Doc. 1-8).

There is no dispute that the plaintiff met with the CYS caseworker on June 19, 2018, with his counsel present, and that he was presented with a revised report of alleged child abuse, namely, a report that changed the type of his suspected abuse from the original April 26, 2018 report to "causing sexual abuse or exploitation of a child." (Doc. 1-9). During the meeting, which plaintiff alleges was an "investigative interview", the CYS caseworker advised the plaintiff that "[CYS] [intended] to issue a report that the abuse of which the plaintiff was accused would be an "indicated" report of child abuse, and that such finding would be communicated to the ChildLine [Registry], in due course." CYS points out that when the caseworker met with the plaintiff and his attorney on June 19, 2018, the caseworker "presented the plaintiff and his attorney with a written outline of his legal rights and provided the plaintiff an opportunity to present relevant information."

Subsequently, on July 2, 2018, the plaintiff received a notice from the Pennsylvania Department of Human Services stating that he was registered

---

[4]Insofar as the plaintiff is challenging the Cumberland County Court's no contact Order and as seeking to enjoin its enforcement, the Anti-Injunction Act, 28 U.S.C. §2283, precludes the court from granting such injunctive relief. See Jung Yun v. Bank of Am., N.A., 2016 WL 7324554 (M.D.Pa. Dec. 16, 2016). The Anti-Injunction Act deprives federal district courts of the ability to "grant an injunction to stay proceedings in a State court." 28 U.S.C. §2283.

5

with the "Statewide Database as a Perpetrator in an Indicated Report of Child Abuse." (Doc. 19-1).

The plaintiff claims that he was not provided with detailed notice of the specific allegations of child abuse against him and an opportunity to defend against the allegations at a pre-dissemination hearing. In his motion, the plaintiff contended that he will be caused irreparable harm if his identity is forwarded to the ChildLine Registry in violation of his "association, privacy, liberty and reputation interests that are protected under the United States and Pennsylvania Constitutions."[5] The plaintiff also states that since an "indicated" finding is widely publicized and placed indefinitely in the statewide registry, his reputation will be irreparably harmed as well as his ability to obtain employment. After the plaintiff filed his motion, his identity was in fact reported to the ChildLine Registry as an "indicated" report of child abuse and he was advised that his name will remain in the database "indefinitely." The plaintiff has also submitted his affidavit with his reply brief, (Doc. 19-2), in which he avers that he is British citizen who has a green card to be in the United States and that the reporting of his identity to the Registry may have adverse consequences on his immigration status and on his application for U.S.

---

[5]The court notes that the plaintiff cannot maintain a private action for damages under the Pennsylvania Constitution. *See* Smithson v. Rizzo, 2015 WL 1636143 (M.D.Pa. April 7, 2015); Moeller v. Bradford Co., 444 F.Supp.2d 316, 327 n. 13 (M.D.Pa. 2011) ("Pennsylvania has no statutory equivalent to 42 U.S.C. §1983, which provides a private right of action for a federal constitutional violation.").

6

citizenship in two years. He also avers that if his green card is cancelled as a result of the registration of his identity, his employment will be adversely impacted.

The plaintiff claims that the finding in his case was based only of an investigation by the CYS caseworker, who had "unfettered discretion" regarding the method for conducting the investigation, and that his investigation was inadequate since the caseworker did not conduct proper interviews with him, with the alleged victim and with the victim's parents. In his affidavit, the plaintiff avers that he was not interviewed by CYS and to his knowledge, the "victim" and her mother were not interviewed. He thus claims that the investigation violated the CPSL and his due process rights since he was not afforded the chance to dispute and defend against the allegations at a hearing before he is listed on the ChildLine Registry. As such, the plaintiff concludes that his reputation "will be irreparably damaged by his placement on the PA ChildLine Registry, as a child sexual abuser" and, in his motion, he requests the court to issue an injunction to prevent the entry of his identity in the Registry. In his reply brief, the plaintiff seeks the court to remove his identity from the Registry since his name is now listed in it.

The grant of injunctive relief, including preliminary injunctive relief, is an extraordinary remedy and it should only be granted in limited circumstances. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426–27 (3d Cir. 1994) (quoting Frank's GMC Truck Cent., Inc. v. Gen.

Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)) (alterations in original). The court's ultimate decision to deny a preliminary injunction is discretionary, though legal and factual determinations will be reviewed according to their normal standard. *See* Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 156 (3d Cir. 2002).

In order to obtain a preliminary injunction, the moving party must demonstrate the following:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

Id. at 1427 (quoting Merchants & Evans, Inc. v. Roosevelt Bldg. Prods., 963 F.2d 628, 623–33 (3d Cir. 1992)). More specifically, the third prong requires a balancing of harms between the plaintiff and the defendant and a finding that the balance favors the plaintiff's request for relief. *See* Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 131 (3d Cir. 2017).

"The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." Id. Moreover, it is only if the first two prongs are satisfied that the court must inquire into the final two factors. Tenafly, 309 F.3d at 157. Thus, "a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." In Re Arthur Treacher's Franchise Litig., 689 F.2d 1137, 1143 (3d Cir. 1982).

However, if a plaintiff proves the first two requirements, it will almost always be the case that the public interest favors preliminary relief, Issa, 847 F.3d at 143, leaving the crux of the matter to the balance of competing interests.

In Mulholland, 706 F.3d at 238, a case similar to plaintiff Z.N.'s claims. The Third Circuit, id., stated:

> "To state a claim under §1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill, 455 F.3d at 233-34. To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest. *See* Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333, 96 S.Ct. 893 (internal quotation marks omitted). To sustain a claim under §1983 based on a violation of procedural due process, [plaintiffs] "must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1277 (3d Cir. 1994).

Additionally, due process "requires only that the means employed to provide notice be such as one 'desirous of actually informing' the person would reasonably adopt to accomplish notice." Hatfield v. Berube, 2017 WL 2559635, *12 (W.D.Pa. June 13, 2017), *aff'd,* 714 Fed.Appx. 99 (3d Cir. 2017), (citing Jones v. Flowers, 547 U.S. 220, 229 (2006)).

In Burns v. Alexander, 776 F.Supp.2d 57, 71 (W.D.Pa. 2011), the plaintiff filed a §1983 action against the DPW Secretary and "allege[d] that the Defendants violated her rights under the Due Process Clause by classifying her as an 'indicated' child abuser on the basis of insufficient evidence, by failing to provide her with a pre-deprivation hearing prior to taking that action, by failing to provide her with a timely post-deprivation hearing, and by preventing her from obtaining access to documents that were of critical importance to her case." Thus, the plaintiff in Burns challenged "the constitutionality of the CPSL both on its face and as applied to her particular situation" under the 14th Amendment Due Process Clause. Id. The court in Burns, 776 F.Supp.2d at 79, stated that "[i]n any case involving a procedural due process claim, the first question for consideration is whether the plaintiff has been deprived of a constitutionally-protected liberty or property interest." (citation omitted). The court in Burns, 776 F.Supp.2d at 80, stated that "[t]here is no question that the listing of [plaintiff] as an 'indicated' child abuser called into question her 'good name, reputation, honor, or integrity.'" Further, the court pointed out that while defamation alone does not constitute a fundamental liberty interest under the 14th Amendment, "the Third Circuit has observed that the Due Process Clause is implicated when state-occasioned defamation is coupled with the deprivation of a 'more tangible interest.'" Id. (citing Baraka v. McGreevey, 481 F.3d 187, 208 (3d Cir. 2007)). The "stigma-plus" test is utilized in the Third Circuit to make this determination. Id.

In the instant case, the plaintiff alleges that CYS' finding that he was a perpetrator of indicated child abuse deprived him of a liberty interest in his reputation and a property interest in the possible loss of his employment, the possible loss of his green card, and the possible loss of his ability to apply for U.S. citizenship in two years.

In considering the above elements, the plaintiff's motion fails based on the first two requirements for issuing a preliminary injunction. Therefore, the court need not address the final two requirements. *See* Tenafly, 309 F.3d at 157.

First, the plaintiff has failed to show a likelihood of success on the merits with respect to his 14th Amendment procedural due process claim.

"Pennsylvania county offices of children and youth services are treated as municipalities for purposes of *Monell*." Hatfield, 714 Fed.Appx. at 102 n. 1 (citing Mulholland, 706 F.3d at 237). Thus, the principles annunciated by the U.S. Supreme Court in *Monell* apply to the plaintiff's due process claim against CYS under §1983. *See* Mullholland, 706 F.3d at 237 ("When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.") (citations omitted); Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can

be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government.

Additionally, a municipality such as Cumberland County is not liable under §1983 merely for employing someone (like the CYS caseworker) who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).

In Mulholland, 706 F.3d at 238-39, the Third Circuit determined that the district court correctly found that "[t]here is no evidence that BCCYS has a policy or custom of conducting inadequate investigations into allegations of child abuse", and that "even if BCCYS's investigation was inadequate, it cannot be said to have been influenced by some 'policy or custom of BCCYS.'" Thus, the Third Circuit concluded that "[w]ithout more, Berks County, the municipality of which BCCYS is simply an agency, cannot be held liable under §1983 for a single caseworker's alleged deviation from the requirements of the CPSL." As in Mulholland, id. at 239, in the present case, "[t]here is no evidence that [CYS] employs a policy or has a custom of conducting desultory investigations."

Additionally, insofar as our plaintiff alleges that CYS failed to provide him with notice regarding his listing on ChildLine, as the Third Circuit in

Mulholland, id., stated, [n]ot only does the statutory duty to inform an individual that he is to be listed on ChildLine fall upon DPW and not BCCYS, see 55 Pa.Code §3490.40 (providing that ChildLine shall provide notice to an individual that an "indicated report[ ] of child abuse [has been] entered into the Statewide Central Register"), but, even if BCCYS were responsible for notifying alleged predators, a one-time failure to do so would not subject the County to municipal liability under §1983 because it does not show that the failure resulted from an agency policy or custom." *See also* Burns v. Alexander, 776 F.Supp.2d 57, 64 (W.D.Pa. 2011) ("Pursuant to the terms of the CPSL, the DPW maintains both a 'Statewide central register' consisting of 'founded and indicated reports' of child abuse ...").

The Third Circuit also pointed out in Mulholland, id., that "the process provided by the CPSL allows a subject of a report of child abuse the opportunity to air new information [including any exculpatory information] at a meaningful time and in a meaningful manner, and due process does not require more." (footnotes omitted). In fact, as CYS states in its response, (Doc. 11 at 6), "[t]he plaintiff is afforded adequate due process protection by the numerous rights afforded him by the Child Protective Services law, including but not limited to: the right to receive formal notice, the right to an attorney, the right to an interview, the right to appeal an indicated determination; the right to a prompt appeal hearing and prompt final decision by the Bureau of Hearings and Appeals."

The court also finds that the plaintiff's complaint does not appear to properly state that he was deprived of a constitutionally-protected liberty interest under the 14th Amendment since his allegations do not appear to satisfy the "stigma-plus" test. *See* Burns, 776 F.Supp.2d at 80-81; Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). Nor is it clear at this stage if the plaintiff had a constitutionally-protected property interest protected by the due Process Clause.

Most importantly, the state procedures still available to the plaintiff provide him with due process of law and he has not shown irreparable harm since he has not availed himself of the state remedies. The June 19, 2018 report, (Doc. 1-9), clearly states that as part of the plaintiff's legal rights, CYS will be conducting an investigation regarding the child abuse allegation against him and that a critical part of the investigation is "conducting an interview with the alleged perpetrator []." The report also advised the plaintiff that he has the right to have an attorney present during his interview and that he has a remedy available to him under state law. Specifically, the report stated that "[a]fter a report is indicated, the person determined to be responsible for the abuse may request that the report be amended or expunged if he or she feels the report is not accurate" and that the requests must be made to the PA Secretary of Human Services within 90 days after being notified that the report is indicated. Additionally, the notice which the plaintiff received from the Department of Human Services, (Doc. 19-1), clearly

advised the plaintiff of his rights if he disagrees with the determination that he has committed abuse. Specifically, it states that the plaintiff can file an appeal to the Department within 90 days of the June 22, 2018 date of the notice, (i.e., by September 20, 2018.) The notice also advises the plaintiff that he has the "right to a hearing now", without filing an appeal with the Department, and that he can ask the Bureaus of Hearings and Appeals for a hearing within 90 days of June 22, 2018. There is no indication that the plaintiff has even attempted to avail himself of these appeal mechanisms and to pursue his rights to be heard as permitted by the state law. Nor does the plaintiff claim that his state appeal remedies are futile or somehow inadequate.

In fact, as indicated, the plaintiff is still well within his 90-day appeal period to challenge the June 19, 2018 report and his listing in the Registry. CYS also notes in its brief, (Doc. 12 at 3 n. 2), that "the CPSL was amended in numerous ways, including now requiring a review by the administrator under the guidance of legal counsel before an individual is reported to the Registry as indicated for child abuse."[6] (citing 23 Pa.C.S. §§6301-6385). As CYS states, (Id. at 16), since "[the] plaintiff has the right to be heard by the Bureau of Hearings and Appeals within 90 days of filing his appeal", "any harm is not final at this point in time, nor is it irreparable."

Additionally, CYS explains that the Registry is not available to the public

---

[6]Since CYS has detailed in its brief, (Doc. 12 at 10-11), with statutory citations, all of the pre and post-deprivation rights under the CPSL to which the plaintiff is entitled, the court does not repeat them herein.

15

and that the identity of an alleged perpetrator of "indicated" child abuse who is reported to the Registry "is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals" and, thus, "any adverse effects on [plaintiff's] reputation are very limited." G.V. v. Department of Public Welfare, 91 A.3d 667 (2014) (citing R. v. Dept. of Public Welfare, 636 A.2d 142, 150 (1994)). In fact, the CPSL, 23 Pa.C.S. §6349(b) provides civil and criminal penalties for the disclosure of any information on the Registry to any unauthorized person. The plaintiff disputes this contention by pointing out that there are many exceptions regarding who has access to his name in the Registry. *See also* Burns, 776 F.Supp.2d at 68. Regardless, there has been no showing that the plaintiff's identity has been disclosed to anyone and that the plaintiff has in fact been adversely affected by any disclosure.

Thus, to deem the alleged speculative harm to the plaintiff from the reporting of his name to the ChildLine Registry as "irreparable" at this stage would ignore the post-deprivation safeguards, in addition to the pre-deprivation safeguards, provided to the plaintiff under Pennsylvania law.

## III. CONCLUSION

Based on the foregoing, the court will **DENY** the plaintiff's motion for an *ex parte* preliminary injunction. (Doc. 3). An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: July 26, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2018 MEMORANDA\18-1286-01.wpd